**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KAREN CREEL,
18073 SE Heritage Dr.
Jupiter, FL, 33469

    *Plaintiff-Claimant,*

  v.

               Civil No. 26-2778

SEQUENT (FLORIDA) LLC,
501 Brickell Key Drive
Suite 303
Miami, FL 33131

NEW YORK LIFE INSURANCE COMPANY
51 Madison Avenue
New York, NY 10010

COREBRIDGE FINANCIAL, INC.
2919 Allen Parkway, Woodson Tower L4-01
Houston, TX 77019

GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA
10 Hudson Yards
New York, NY 10001

PACIFIC LIFE INSURANCE COMPANY
700 Newport Center Drive
Newport Beach, California, 92660

LINCOLN NATIONAL LIFE INSURANCE
COMPANY
150 N. Radnor Chester Road
Radnor, PA 19087

PLANNING ALLIANCE
1040 Broad Street Suite 202
Shrewsbury, NJ 07702

1

GENTRY PARTNERS LTD.                              )
3 Columbus Circle, 15th Floor                    )
New York, NY 10023                               )
                                                 )
    *Interpleader Defendants.*  )
_____ )

## COMPLAINT FOR INTERPLEADER

Interpleader Plaintiff-Claimant Karen Creel ("Ms. Creel"), by and through her attorneys, and for her Complaint for Interpleader pursuant to 28 U.S.C. § 1335, alleges as follows:

## INTRODUCTION

1.  This Complaint seeks to resolve competing claims to a $1,096,030.88 sum (the "$1.096mm Fund") held by Interpleader Plaintiff-Claimant Karen Creel.

2.  The $1.096mm Fund consists of commission payments made by five insurance carriers and two insurance general agencies (collectively, the "Insurance Carrier/General Agency Interpleader Defendants") for services rendered by Ms. Creel in placing thirteen insurance policies on behalf of a client of Ms. Creel. Ms. Creel accepted, and continues to hold, the $1.096mm Fund of commission payments paid by the Insurance Carrier/General Agency Interpleader Defendants.

3.  Interpleader Defendant Sequent (Florida) LLC and its affiliates, Sequent Group and Sequent North America, (hereinafter referred to as "Sequent"), which previously employed Ms. Creel, has asserted, through counsel, that it is entitled to the $1.096mm Fund and has threatened legal action.

4.  Upon information and belief, Sequent has contacted the Insurance Carrier/General Agency Interpleader Defendants and has stated to the Insurance Carrier/General Agency Interpleader Defendants that they paid commissions to the incorrect party and remain liable for payment of the commissions to Sequent. Accordingly, Plaintiff-Claimant reasonably anticipates

that the Insurance Carrier/General Agency Interpleader Defendants may also lodge claims against the $1.096mm Fund for repayment of the commissions they paid.

5.      Accordingly, Interpleader Plaintiff-Claimant brings the instant action to discharge all claims to the $1.096mm Fund and prevent multiple litigations over that single fund by numerous potential claimants, including but not limited to Sequent, the Insurance Carrier/General Agency Interpleader Defendants, and Ms. Creel.

## **PARTIES**

6.      Interpleader-Claimant Karen Creel is an individual residing in New York and Florida and a citizen of Florida.

7.      Interpleader Defendant Sequent (Florida) LLC is a limited liability company whose sole member is, on information and belief, Sequent Switzerland Holdings (AG), a Swiss corporation with its principal place of business at Seefeldstrasse 279a, 8008 Zurich, Switzerland.

8.      Interpleader defendant New York Life Insurance Company ("NY Life") is a New York corporation with its principal place of business in New York, NY.  NY Life made insurance commission payments that are included in the $1.096mm Fund.

9.      Interpleader defendant Corebridge Financial, Inc. ("Corebridge") is a Delaware corporation with its principal place of business in Houston, Texas.  Corebridge made insurance commission payments that are included in the $1.096mm Fund.

10.     Interpleader defendant Guardian Life Insurance Company of America ("Guardian") is a New York corporation with its principal place of business in New York, NY. Guardian made insurance commission payments that are included in the $1.096mm Fund.

11. Interpleader defendant Pacific Life Insurance Company of America ("Pacific Life") is a Nebraska corporation with its principal place of business in California. Pacific Life made insurance commission payments that are included in the $1.096mm Fund.

12. Interpleader defendant Lincoln National Life Insurance Company ("Lincoln") is an Indiana corporation with its principal place of business in Radnor, Pennsylvania. Lincoln made insurance commission payments that are included in the $1.096mm Fund.

13. Interpleader Defendant Planning Alliance is an insurance General Agency with its principal place of business in New Jersey. Planning Alliance made commission payments that are included in the $1.096mm Fund.

14. Interpleader Defendant Gentry Partners Ltd. is an insurance General Agency based and domiciled in New York, NY. Gentry Partners made commission payments that are included in the $1.096mm Fund.

## JURISDICTION AND VENUE

15. Jurisdiction is proper in this Court pursuant to the "minimal diversity" requirement of 28 U.S.C. § 1335. At least two adverse claimants who claim or may claim an entitlement to the $1.096mm Fund are citizens of different States as defined in 28 U.S.C. § 1332. Interpleader Plaintiff-Claimant is a citizen of Florida and Interpleader Defendant Sequent (Florida) LLC is a citizen of Switzerland, as its sole member is a corporation organized under the laws of Switzerland with a principal place of business at Seefeldstrasse 279a, 8008 Zurich, Switzerland. Defendants NY Life, Corebridge, Guardian, Pacific Life and Lincoln are citizens of New York, Delaware, New York, Nebraska, and Indiana, respectively. The property in controversy is worth approximately $1,096,030.88.

16.     Venue is proper pursuant to 28 U.S.C. § 1397 because at least one claimant, Plaintiff-Claimant Karen Creel, resides in the Southern District of New York,[1] and multiple interpleader defendants (and putative claimants) are incorporated in New York and/or have their principal place of business in New York.

### STATEMENT OF INTERPLEADER ACTION

### Nature of the Property

17.     As part of this interpleader action, Interpleader Plaintiff-Claimant Karen Creel has deposited (or will deposit when so ordered by the Court) the $1.096mm Fund into the registry of the Court pursuant to Local Civil Rule 67.1.

18.     Prior to its deposit with the Clerk of Court, Ms. Creel accepted, and has held, the $1.096mm Fund, which she reasonably believed to comprise legitimate, bona fide payments to her for placing thirteen insurance policies across multiple carriers for her client, and that she was entitled to as compensation for services rendered to Sequent, and based on breach of contract, fraudulent inducement, and unjust enrichment by Sequent.

19.     There are present and potential future disputes about the ownership of the $1.096mm Fund.

20.     Ms. Creel claims an entitlement to the full $1.096mm Fund as commissions paid to her as producer under contracts with Insurance Carrier/General Agency Interpleader Defendants, as compensation for services rendered by her to Sequent, and based on claims for breach of contract, unjust enrichment, and fraudulent inducement against Sequent.

---

[1] Ms. Creel resides in both New York and Florida.

**Factual Background**

21.     Ms. Creel is a wealth manager, insurance professional, and trust and estates lawyer with over thirty years of experience developing complex wealth strategies for ultra-high net worth clients.  Prior to joining Sequent, Ms. Creel was Managing Director and Private Advisor with the Rockefeller Global Family Office.

22.     Starting in or about February 2024, Richard Martin, the Executive Chairman of Sequent, recruited Ms. Creel to spearhead Sequent's newly opened U.S.-based wealth structuring platform.  Ms. Creel's role was to build and lead an integrated planning model leveraging Sequent's global trust clients.  In numerous discussions over several months, Mr. Martin represented to Ms. Creel that he would transition her into the role of Chief Executive Officer of Sequent North America and promised her equity in the company.  To that end, Ms. Creel worked closely with Mr. Martin, as well as Sequent's Chief Financial Officer and Chief Operations Officer, to develop a detailed business case and compensation model ("Business Case"), which formed the basis for her decision to leave Rockefeller Global Family Office.

23.     Ms. Creel joined Sequent in March 2024, and signed an employment agreement with Sequent, which incorporated and attached the Business Case.

24.     As memorialized in the Business Case, Sequent represented to Ms. Creel that it would source a certain number of deals each year from its own client base over a six-year period. Specifically, the Business Case projected that Sequent would source 100% of deals in year 1 of Ms. Creel's employment, 60% of deals in year 2, 50% of deals in year 3, and 40% of deals in years 4, 5, and 6.

25.     The employment agreement provided that Ms. Creel would receive 50% of net commissions on insurance contract placements during her first year of employment, and 30% of

net commissions thereafter.  Thus, under the commission-based compensation structure, expected Sequent-sourced deals were projected to provide Ms. Creel with millions of dollars in expected revenue over the next six years.

26.     The Business Case was not implemented and the representations and promises made to Ms. Creel by Mr. Martin and Sequent turned out to be false and fraudulent.  Immediately upon joining Sequent, Ms. Creel was siloed into an insurance role and excluded from planning relationships, was never promoted to CEO of Sequent North America, and was not given equity ownership in the company as promised.  Critically, Ms. Creel was also prevented from accessing Sequent's client base, in breach of her employment agreement and the representations and promises made to her by Mr. Martin and Sequent, thereby costing Ms. Creel millions in expected income.  As a result, Ms. Creel was forced to self-source clients and revenue using her own, pre-existing network and client base.

27.     Not only did Sequent breach its employment agreement and renege on its representations and promises, but from the outset of her employment with Sequent, Sequent demonstrated a pattern of lack of governance, lack of oversight, and failure to comply with regulatory requirements.  Over a two-year period, Sequent failed to provide Ms. Creel monthly or periodic draw/commission statements (in violation of, at a minimum, FINRA Rules 4511 and 3001), missed payroll on three occasions, failed to remit owed commissions to Ms. Creel, and failed to remit payroll taxes to the Internal Revenue Service—all accounting and regulatory irregularities that Ms. Creel reported internally to Sequent.

28.     Given Sequent's failure to provide the deal flow promised in her employment agreement, Ms. Creel was forced to source and generate revenue for herself.  In or about early 2026, Ms. Creel placed thirteen insurance policies for a single client sourced by Ms. Creel from a

long-standing relationship that existed prior to her employment by Sequent (the "Creel Client Deal").

29.     The placement of those thirteen policies generated the commission payments forming the $1.096mm Fund.

30.     Placement of the thirteen policies involved thirteen separate applications, numerous submissions and communications with insurance company representatives, and the eventual need to re-paper, re-sign, and reissue the policies.

31.     The policies were placed under Ms. Creel's producer code and certain commissions were paid directly to her by the carriers.

32.     At all relevant times, Ms. Creel informed Mr. Martin that commission payments from policies placed by Ms. Creel, including the thirteen policies, were coming in across multiple channels, including payments to her directly.

33.     Following repeated requests for a reconciliation statement from Sequent, after nearly two years of employment, Mr. Martin finally provided Ms. Creel with a reconciliation statement purporting to reflect that she *owed* Sequent over $400,000 in commissions—despite the fact that she had independently sourced approximately $2 million in revenue during her two-year tenure there. To the contrary, Ms. Creel is owed the commissions resulting from the Creel Client Deal, as well as other sums.

34.     Ms. Creel repeatedly asked Mr. Martin to supply the basis for Sequent's nonsensical position on commissions.  He failed to do so.

35.     Immediately following Ms. Creel's disclosure that she had engaged counsel, Sequent terminated Ms. Creel effective March 30, 2026.

36.    On information and belief, Sequent has over the past week contacted Insurance Carrier/General Agency Interpleader Defendants to inform them that the commissions were paid to the incorrect party and that the Insurance Carrier/General Agency Interpleader Defendants remain liable to Sequent for the payment of commissions.

**COMPETING CLAIMS AND POTENTIAL CLAIMS AGAINST THE $1.096mm FUND**

37.    Ms. Creel is entitled to the $1.096mm Fund as commission payments for services rendered as producer under contracts with the carriers and based on her claims against Sequent for services rendered, breach of contract, fraudulent inducement, and unjust enrichment.

38.    Ms. Creel faces potential claims by Sequent.  Sequent has threatened Ms. Creel, through her attorneys, with civil action concerning the $1.096mm Fund and demanded that she turn over to Sequent commissions paid to her by the Insurance Carrier/General Agency Interpleader Defendants.

39.    Ms. Creel also faces potential claims to the $1.096mm Fund by the Insurance Carrier/General Agency Interpleader Defendants whose commission payments form the $1.096mm Fund.  In light of Sequent's statements to Insurance Carrier/General Agency Interpleader Defendants that they remain liable to Sequent for the payment of commissions, Ms. Creel reasonably expects that some or all of Insurance Carrier/General Agency Interpleader Defendants will demand repayment of those commissions.

40.    In sum, Interpleader Plaintiff-Claimant fears that a disposition of a claim by any single Interpleader Defendant without resolution of all claims to the $1.096mm Fund in the Interpleader action would subject Interpleader Plaintiff-Claimant to multiple litigations and the risk of inconsistent judgments.  Accordingly, Interpleader Plaintiff-Claimant cannot determine, without exposing herself to repeat litigation, whether Sequent or the Insurance Carrier/General

Agency Interpleader Defendants could later lay claim to the $1.096mm Fund, or whether Ms. Creel is lawfully entitled to retain that property for services compensable by the Insurance Carrier/General Agency Interpleader Defendants and, additionally, based on claims against Sequent for services rendered, breach of contract, fraudulent inducement, and unjust enrichment.

WHEREFORE, Interpleader Plaintiff-Claimant respectfully requests judgment as follows:

a)  An Order permitting Interpleader Plaintiff-Claimant to pay into the registry of this Court the $1.096mm Fund;

b)  An Order discharging Interpleader Plaintiff-Claimant from further liability with respect to the $1.096mm Fund;

c)  An Order restraining and enjoining Interpleader Defendants by Order and Injunction from this Court from instituting any action or proceeding in any state or United States court for the recovery of the Property or any part of it;

d)  An Order requiring the Interpleader Defendants to interplead and establish their rights – if any – to the $1.096mm Fund;

e)  An Order entering judgment declaring that Interpleader Plaintiff-Claimant is legally entitled to retain the $1.096mm Fund as against any and all claims by Interpleader Defendants;

f)  An Order awarding Interpleader Plaintiff-Claimant her costs and attorneys' fees; and

g) An Order awarding Interpleader Plaintiff-Claimant such other and further relief as this Court deems just, equitable, and proper.

Dated: April 6, 2026

**AEGIS LAW GROUP LLP**

By:    /s/ Serine Consolino

Serine Consolino (SC0525)
Paul C. Rauser (PR8817)
Alison Van Horn
801 Pennsylvania Ave NW, Suite 740
Washington, D.C. 20004
Tel: 202-706-7031
sconsolino@aegislawgroup.com
prauser@aegislawgroup.com
avanhorn@aegislawgroup.com

*Counsel for Interpleader Plaintiff-Claimant*